**In re Arthur J. COURNOYER d/b/a Cournoyer's Used Truck Parts, Debtor in Possession.**

**Arthur J. COURNOYER, d/b/a Cournoyer's Used Truck Parts, Plaintiff,**

**v.**

**TOWN OF LINCOLN, Defendant.**

**Bankruptcy No. 8200510.
Adv. No. 840122.**

United States Bankruptcy Court, D. Rhode Island.

Oct. 12, 1984.

---

George M. Prescott, Oster, Groff & Prescott, Lincoln, R.I., for debtor.

Joseph T. Little, Town Sol., Little, Little & McDonald, East Providence, R.I., for defendant.

William H. Tucker, Boston, Mass., U.S. Trustee.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the debtor in possession's complaint to have the Town of Lincoln enjoined from removing and disposing of his used truck parts inventory located at 130 Cobble Hill Road, Lincoln, Rhode Island. In addition to the injunctive relief sought, the debtor in possession (hereinafter debtor) requests compensatory damages of $150,000, interest and costs. The defendant Town of Lincoln asserts that its actions were taken under the authority of valid state court orders, in accordance with its own zoning laws, and that 11 U.S.C. §§ 362(b)(4) and (5) excepts such enforcement activity from the operation of the automatic stay.

The issues before us for determination are: (1) whether the conduct in question is automatically stayed by 11 U.S.C. § 362(a), and (2) if there is no automatic stay, whether the Town of Lincoln should be enjoined,

nevertheless, under the Court's discretionary power. 11 U.S.C. § 105(a).

The history of this controversy is long and complex, but the relevant facts are not in dispute.[1] Since 1947, Arthur Cournoyer has continuously operated a truck parts salvage and scrap business in the Town of Lincoln, on property now zoned for residential use only. Prior to 1960, when the Rhode Island Supreme Court[2] upheld Lincoln's zoning restrictions and denied Cournoyer's first request for a variance, and since that time, Cournoyer's continued operation of his salvage business has kept these parties in the Rhode Island courts.

In November 1981, Mr. Cournoyer again sought relief from existing zoning restrictions by applying to the Lincoln Zoning Board of Review for a variance, and after hearing, that application was also denied. Notwithstanding the denial of his application, Cournoyer continued to operate his business (in violation of the applicable zoning ordinances), and on June 25, 1982 he filed a Chapter 11 petition in this Court. On November 15, 1982 the Town of Lincoln initiated contempt proceedings against him in the Providence County Superior Court. *Town of Lincoln v. Joseph A. Cournoyer, et al.*, Equity No. 26210 (R.I.Super.Ct. 1982). After hearing, an order was entered on November 18, 1982 that provided in part:

2. Mr. Waznis is directed to fulfill his agreement to clean up the property and to do so as rapidly as possible.

3. Mr. Cournoyer will have an option to propose a plan to remove all of the material from this land to some other property if he wishes to preserve title to the material to himself. Mr. Cournoyer will have one week to advise the Master if he wishes to avail himself of this option.

Cournoyer appealed the order, and that matter is pending in the Rhode Island Supreme Court. *Town of Lincoln v. Joseph A. Cournoyer, et al., appeal docketed,* No. 82–548–A (R.I. Dec. 14, 1982).

On March 30, 1983 the Town of Lincoln again moved in the Rhode Island Superior Court to have the debtor adjudged in contempt, and after hearing, an order was entered on April 8, 1983, by Presiding Justice Anthony Giannini, providing *inter alia:*

1. That the Zoning Officer and the Public Works Director of the Town of Lincoln are to proceed to clear the land and dispose of the junk at the expense of the owner of the land.

That order was also appealed to the Rhode Island Supreme Court, *appeal docketed,* No. 82–548–A (R.I. April 27, 1983). Cournoyer's motion for a stay of the April 1983 order was denied by the Superior Court on April 26, 1983, and a request to stay enforcement was considered by the Rhode Island Supreme Court and also denied on December 1, 1983.

On August 24, 1984, pursuant to the April 1983 order, the Town of Lincoln, through its agents, began to physically remove and dispose of the truck parts, and that action prompted the debtor to file the instant complaint for an injunction in the Bankruptcy Court. After hearing on the same day, we entered a temporary restraining order prohibiting the Town of Lincoln from removing any property, pending a hearing on preliminary injunction which was scheduled for hearing on the following Tuesday, only four days later.[3] The hearing on preliminary injunction was concluded on August 28, 1984, and the matter taken under advisement, with the temporary restraining order to remain in effect.

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. *Cournoyer v. Zoning Board of Review,* 92 R.I. 42, 166 A.2d 128 (1960).

3. That order was appealed by the Town of Lincoln to the District Court, which promptly dismissed the appeal, holding that "the Bankruptcy Judge has scheduled a merits hearing on preliminary injunction for tomorrow (August 28). The appeal [to the District Court] is ... untimely and improvident." Selya, J. *Arthur J. Cournoyer v. Town of Lincoln,* No. 84–0455–S (D.R.I. Aug. 24, 1984).

As the travel must suggest, the issues raised in this dispute are perplexing ones, and have pitted the Bankruptcy Court's jurisdiction over the debtor's property against the Town of Lincoln's right to enforce its zoning laws. Two governmental policies—one federal and one municipal, are in apparent conflict. A fundamental purpose of federal bankruptcy law is the preservation of the estate, for the benefit of the debtor, as well as his (her) creditors. On the other hand the local ordinance in question is designed to achieve a uniform plan for residential land use in the Town of Lincoln. With that goal in mind, the Town of Lincoln has for a long time been attempting to prevent the debtor from operating his parts salvage business—action which the Town concedes is tantamount to putting the debtor out of business. Yet, as even the debtor's counsel acknowledged at the August 28 hearing, no measures short of removing the inventory are available to achieve the Town's purpose.

The resolution of this ongoing dispute depends, in part, on the interpretation of 11 U.S.C. § 362 and subsections 362(b)(4) and (5), which contain exceptions to the automatic stay:

§ 362 Automatic stay.

(a) Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

. . . .

(b) The filing of a petition ... does not operate as a stay—

. . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

Obviously, then, under subsections 362(b)(4) and (5), certain governmental enforcement activities may proceed, unaffected by the automatic stay. The debtor argues, however, that although § 362(b)(4) contains an exception to the automatic stay in § 362(a)(1), and while § 362(b)(5) also provides an exception to the automatic stay in § 362(a)(2), with respect to § 362(a)(3), which stays "any act to obtain possession of property of the estate ...," there is *no exception.* Debtor's Memorandum at 9. The debtor argues, therefore, that a governmental unit is automatically stayed from conducting *any* enforcement proceeding which operates *against the property* of the debtor. That conclusion overstates the language of the statute as well as the intention of Congress,[4] and requires one to

---

**4.** The pertinent legislative history on the subject of police and regulatory exceptions states:

[W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of

such law, the action or proceeding is not stayed under the automatic stay.

. . . .

[The exception] does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all credi-

ignore the effect of § 362(b)(5) and § 362(a)(2). Collectively, these two sections permit the *enforcement against property* of the estate of a judgment obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power, provided the judgment to be enforced is *other than a money judgment.* Clearly, under § 362(a)(5), certain governmental actions against property of the estate are excepted from operation of the stay. *See, e.g., Colonial Tavern, Inc. v. Byrne (In re Colonial Tavern, Inc.),* 420 F.Supp. 44 (D.Mass. 1976) (forfeiture of liquor license for violation of midnight closing hour); *Thomassen v. Div. of Medical Quality Assurance (In re Thomassen),* 15 B.R. 907, 8 B.C.D. 530 (B.A.P. 9th Cir.1981) (revocation of physician-debtor's medical license excepted from automatic stay).

The two-step test, then, is to first determine whether the government's action is a valid exercise of its police or regulatory power, and if so, whether said action is an attempt to enforce a money judgment.

 We begin with the premise that a reorganization debtor is not immune to the consequences of zoning enforcement which may result in loss of assets or the curtailment of the rehabilitation process. *See Matter of Nat'l Hospital & Institutional Builders Co.,* 9 B.R. 948 (S.D.N.Y.1981). In that case a nursing home (the debtor's sole asset) was prevented from operating in a residential zone by the revocation of its certificate of occupancy. Although the forfeiture of the certificate impaired the debtor's reorganization, the court held that the "automatic stay provisions were never intended to place a bankrupt above and beyond the reaches of state regulatory law." *Id.* at 952. It is also well settled that the valid exercise of police [zoning] power is not confined to the elimination of hazardous or unsanitary conditions, but extends, among other things, to land-use planning

as well. *See Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974). We conclude here that the Town of Lincoln's proposed enforcement of its zoning law is a valid exercise of its police or regulatory power.

The statutory language and legislative history notwithstanding, Cournoyer makes the additional argument that the Town's action is outside the scope of § 362(b)(4) and (5), and relies on the Eighth Circuit case, *State of Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982), for the proposition that police or regulatory enforcement may not impinge on the pecuniary interest of the estate, period! Although the debtor may find some solace in dictum contained in that decision, the case is clearly distinguishable from the case at bar, and has no application here. In the Missouri case, the state was seeking to enforce local statutes which authorized the state to liquidate insolvent grain warehouses. As the Eighth Circuit Court of Appeals observed, Missouri's laws governing the liquidation of grain warehouses undermined the basic principle that "a bankruptcy action preempts state insolvency proceedings." *Id.* at 776. Indeed, that court found, and on the facts there we agree entirely, that the statute's "sole objective [was] to protect the pecuniary interests in property of purported depositors." *Id.* at 773. That was clearly a supremacy question that had to be resolved in favor of federal law. In contrast, the enforcement of the Town of Lincoln's zoning law, unlike the Missouri grain insolvency statute, is precisely the sort of local police and regulatory power that is recognized in the cases and that is contemplated in sections 362(b)(4) and (5).

Having concluded that zoning enforcement (on the facts here) is a valid exercise of police power, we next determine whether the judgment sought to be enforced is a

---

tors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

S.Rep. No. 95–989 at 52, H.Rep. No. 95–595 at 343, U.S.Code Cong. & Admin.News 1978, 5787 at 5838, 6299.

"money judgment."[5] The phrase, "enforcement of a money judgment," (§ 362(b)(5)) stands without definition, either by the Bankruptcy Code or its legislative history. That the case law on the subject also is not uniform is demonstrated by the opposite conclusions reached by the Sixth and Third Circuit Courts of Appeals.

In *In re Kovacs*, the Sixth Circuit Court of Appeals stayed enforcement of an Ohio state court order that required the debtor to remove chemical waste. Such mandatory injunction, the court concluded, would require the debtor's expenditure of funds, and was, therefore, the attempted enforcement of a money judgment. *Ohio v. Kovacs (In re Kovacs)*, 681 F.2d 454, 456 (6th Cir.1982), *vacated and remanded on question of mootness*, 459 U.S. 1167, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983).[6] The view taken by the *Kovacs* court is that a "money judgment" is any judgment which requires the expenditure of money to enforce.

Issues similar to those in *Kovacs* were addressed and decided differently by the Third Circuit Court of Appeals in *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 11 B.C.D. 1202 (3rd Cir.1984). There, the debtor, a strip mine operator was ordered by the Pennsylvania Department of Environmental Resources, pursuant to a state court judgment, to remedy erosion by backfilling the land. That Court rejected the reasoning in *Kovacs*, which the Pennsylvania bankruptcy court had adopted (*In re Penn Terra Ltd.*, 24 B.R. 427 (Bankr.W.D.Pa.1982)), and concluded that the definition of "money judgment" applied in *Kovacs* is "unduly broad." *See Penn Terra Ltd. v. Dept. of Environmental Resources, supra*, 733 F.2d 267, 11 B.C.D. at 1208. As Judge Garth, speaking for the Third Circuit, stated: "Were we to find that any order which requires the ex-

penditure of money is a 'money judgment,' then the exception to section 362 for government police action, which should be construed broadly, would instead be narrowed into virtual nonexistence." *Id.* In circumstances similar to those before us, the Court also noted that the injunctive remedy sought by the state lacked the characteristics traditionally associated with a money judgment. It was not intended to provide compensation for past injuries, the state was not a creditor seeking money damages, and the mere payment of money could not satisfy the state's objective of remedying the land erosion caused by the debtor's continued strip mining operation. *Id.* 733 F.2d 267, 11 B.C. at 1209. *See Shea v. Commonwealth of Pa. (In re Blue Coat Corporation)*, 5 B.C.D. 571 (Bankr.M.D.Pa. 1979) (debtor required to perform backfilling operations to repair damages caused by strip mining); *see also Matter of Canarico Quarries, Inc.*, 466 F.Supp. 1333 (D.P.R. 1979) (operation of quarry enjoined for failure to comply with environmental regulation, which required installation of dust control equipment with an estimated cost of $323,000).

■ We agree with the reasoning of the Third Circuit Court of Appeals, and conclude that the Town of Lincoln's action should not be construed as the enforcement of a "money judgment." There is no basis for a finding that the Town of Lincoln is seeking a pecuniary advantage over creditors of the debtor with respect to the debtor's assets, and money damages cannot satisfy the Town of Lincoln's objective to enforce its zoning regulations. With regard to the impact on the debtor's property resulting from the enforcement of an order authorizing that the debtor's inventory be removed, there is no distinction between what the Town of Lincoln is doing, and the

---

**5.** We reject the debtor's contention that, whatever the *appearance* of the Town's action, "the object was really to procure ... possession of Arthur's inventory." Debtor's Memorandum at 9–10. It is clear that the Town of Lincoln has no desire to "possess the debtor's inventory" and, in fact, the removal of the debtor's salvage operation is a burden that the Town has as-

sumed only as a last resort in its ongoing attempt to enforce residential zoning in the area.

**6.** On remand, because the case had been converted, the Sixth Circuit in *In re Kovacs*, 717 F.2d 984 (6th Cir.1983) *cert. granted*, —— U.S. ——, 104 S.Ct. 1438, 79 L.Ed.2d 759 (1984), did not address the issue of money judgment.

enforcement of regulations which has resulted in the revocation of a debtor's liquor, medical, occupancy, or operating license. And while the unfortunate but unavoidable side effect of governmental enforcement action. may be to diminish the estate, this may not foreclose the fundamental right of local governments to enforce their laws. Based upon these considerations, we conclude that the enforcement action by the Town of Lincoln comes within the § 362(b)(4) and (5) exceptions to the automatic stay.

It should be noted that the Court's supervisory role over the debtor's estate is not ‚undercut by a finding that the Town of Lincoln's action is not subject to 11 U.S.C. 362(a), because even if the stay is not operative, a bankruptcy court may, in appropriate circumstances, issue injunctive relief under 11 U.S.C. § 105.[7] Congress took explicit note of this authority when it excepted government regulation from the automatic stay:

> The effect of an exception is not to make the action immune from injunction.... Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11.... By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay.... Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

S.Rep. No. 95–989 at 51; H.Rep. No. 95–595 at 342, U.S.Code Cong. & Admin.News 1978, at 5837, 6298. In order to obtain a preliminary injunction, the party seeking relief must establish that: (1) the plaintiff will suffer irreparable injury if the injunction is not granted; (2) the plaintiff has exhibited a likelihood of success on the merits; (3) the injury outweighs any harm which granting injunctive relief would inflict on the defendant; and (4) an injunction will not adversely affect the public interest. *See Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981); *F.G.M. Associates, Inc. v. City of East Providence (In re F.G.M. Associates, Inc.)*, 17 B.R. 765, 766 (Bankr.D.R.I.1982).

■ Aside from the irreparable harm which will most likely result to Mr. Cournoyer, we find that the other elements all weigh in favor of the Town of Lincoln.

To begin with, the debtor has failed to demonstrate any likelihood of success on the merits. This is but the most recent of a series of legal battles over more than a 25 year period, during which the Town of Lincoln has sought to enforce its zoning regulations against Arthur Cournoyer. Both the Rhode Island Superior Court and the Supreme Court have refused to stay the enforcement of state court orders to clear the debtor's land, indicating that those courts saw no likelihood of the debtor succeeding on the merits of the pending litigation.[8]

The debtor also requests this Court to enjoin the Town of Lincoln, pending resolu-

---

7. The Town of Lincoln argues that in the present circumstance this Court has no authority to issue an injunction because under 28 U.S.C. § 1481 a bankruptcy court "may not enjoin another court." While we agree with the statement that it is beyond this Court's authority to enjoin another court, we also hold that a bankruptcy court *may enjoin the parties* in state court litigation where there is "a threat to the estate's assets." *In re Bel Air Chateau Hospital, Inc.*, 611 F.2d 1248, 1251 (9th Cir.1979). *See also Penn Terra Ltd. v. Dept. of Environmental Resources, supra; Matter of Davis*, 691 F.2d 176 (3rd Cir.1982); *Matter of Shippers Interstate Service, Inc.*, 618 F.2d 9 (7th Cir.1980); *In re Mason*, 18 B.R. 817 (Bankr.W.D.Tenn.1982); and 28 U.S.C. § 1471(e).

8. At the commencement of the first contempt proceeding brought by the Town of Lincoln, the debtor filed a separate action in the Superior Court challenging the constitutionality of the Lincoln zoning ordinance. That action, pending since January 1982, has not been scheduled for trial, and there is no evidence that the debtor has taken any action to obtain a hearing. After this matter was taken under advisement, supplemental memoranda were requested of the parties, and several conference telephone calls were held in our attempt to establish the status and substance of all pending state court proceedings which might be relevant to the instant dispute. The Town of Lincoln asserts that the constitutional issue raised in 1982 has previously been heard and decided in *Cournoyer v. Zoning Board of Review*, 92 R.I. 42, 166 A.2d 128

tion in the state Supreme Court of his appeals which challenge the validity of two state court orders. *Town of Lincoln v. Joseph A. Cournoyer, et al., appeals docketed,* No. 82–548–A (R.I. Dec. 14, 1982 and April 27, 1983). Upon consideration of the arguments raised in those appeals, (with which we are familiar, because the debtor's state court appellate brief was submitted as his memorandum to this Court), even a favorable outcome to the debtor in that forum would not aid him here. As the issues have been framed on appeal, the Rhode Island Supreme Court has been requested to rule that the Bankruptcy Court's jurisdiction over the debtor's property prevents the enforcement of state court orders authorizing removal of such property. In declining to grant the injunctive relief requested, we are in fact deciding that same issue in favor of the Town of Lincoln.

With respect to the third and fourth elements required for the issuance of a preliminary injunction,—the relative harm to the parties, and the effect upon the public interest—both of those issues must be resolved in favor of the Town of Lincoln, based on the facts before this Court. As for the relative harm to the parties, although our refusal to enjoin the Town of Lincoln will certainly cause economic harm to the debtor, the Town of Lincoln and its residents have been unreasonably delayed in implementing local zoning laws, and will on balance suffer greater collective harm if the debtor is permitted to continue the ille-

gal salvage operation any longer. *See City of New York and State of New York v. Quanta Resources Corp. (In re Quanta Resources Corp.),* 739 F.2d 912, 12 B.C.D. 175 (3rd Cir.1984).

At this stage, after the issuance of the two orders by the Rhode Island Superior Court, and in light of the debtor's persistent refusal to comply with local zoning restrictions throughout the long history of this dispute, the public interest of the Town of Lincoln clearly overrides the concerns of the debtor.[9] Although the facts in the case at bar present a vivid example of municipal law in conflict with the property interest of the estate of a Chapter 11 debtor, the Town of Lincoln's right to establish and maintain an aesthetic residential environment for its inhabitants must be recognized as serving a strong public interest. A municipality seeking to enforce zoning regulations on behalf of its residents and taxpayers should not be made to wait indefinitely, and, on the present facts, to permit the debtor to continue operating in violation of Lincoln's zoning ordinances would be a highly improper intrusion by this Court into local municipal and judicial affairs. *See Matter of Nat'l Hospital and Institutional Builders Co., supra; Matter of Canarico Quarries, Inc., supra; see also* 28 U.S.C. § 959.[10] Typically, local government versus bankruptcy confrontations involve: (1) the affected governmental unit; (2) the debtor; and (3) the debtor's creditors. In the case at bar, the debtor is not insolvent (his sworn schedules disclose assets of $217,000 (inventory in the amount

---

(1960). The debtor contends however, that because the zoning was subsequently changed from farming and residential to residential use only, the constitutional issue pending in the Superior Court is not res judicata. To us, this appears, a fortiori, to be a most untenable position. In light of the previous Rhode Island Supreme Court decision (1960), the Superior Court ordering the removal of Cournoyer's inventory, and the refusal by the Rhode Island Superior and Supreme Courts to stay the enforcement of the instant order, it appears that the debtor has had more than his "day in court," already.

9. Fundamentally, the bankruptcy court's power to enjoin the litigants in state court proceedings

is to give the debtor an opportunity to take stock and formulate plans for repayment, with protection from "a chaotic and uncontrolled scramble for the debtor's assets" in a variety of different courts. *See Litton Systems, Inc. v. Frigitemp Corp. (In re Frigitemp Corp.),* 8 B.R. 284, 289 (S.D.N.Y.1981) (citations omitted). *See also* 2 *Collier on Bankruptcy* ¶ 362.01 (15th ed. 1984) at 362–17. Those objectives are clearly not present here.

10. 28 U.S.C. § 959 states, in relevant part:
(b) A ... debtor in possession, shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, ....

of $130,000), and total debts of $18,000), so that the instant dispute involves only the debtor and the Town of Lincoln.[11] Reorganization is not the object of this Chapter 11 case, and although the petition cannot be said to have been filed in bad faith, the fact that the dispute is between Arthur Cournoyer and the Town of Lincoln places the center of gravity of this matter in the state courts of Rhode Island, and not in the Bankruptcy Court. Finally, although there are undoubtedly instances in which it may be reasonable and appropriate for a bankruptcy court to make determinations involving the application of state law, the arguments available to the debtor have already been, or are being litigated within the Rhode Island state court system, and it is our conclusion that these issues belong in a state rather than a bankruptcy forum. See *Isthmus Landowners Ass'n v. State of Cal.*, 601 F.2d 1087, 1091 (9th Cir.1979) (zoning enforcement "touches a sensitive area of social policy upon which the federal courts ought not to enter...") (quoting *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941)). For all of the foregoing reasons, injunctive relief is not warranted. Accordingly, the temporary restraining order is vacated, the debtor's request for a preliminary injunction is denied, and his request for compensatory damages is also denied.

It is undisputed that the only way to halt the continuing zoning infraction is to remove the property in question. In permitting the Town of Lincoln to proceed with the removal of the debtor's inventory, however, this Court does not relinquish its jurisdiction over the property of the estate. Although the evidence is scant and inconclusive, it was suggested that the method of removal and disposal of the inventory could produce disparate results as to proceeds. Because there is no creditors' committee, and because this case has more of the earmarks of a liquidation than a reorganization proceeding, the immediate appointment of a trustee is required to monitor at least, and to oversee if necessary, the removal process in order to protect the estate. In addition to the normal statutory duties and powers of the office, the trustee should ascertain that the method of removal and disposal of inventory to be employed by the Town of Lincoln is prudent and reasonable, and that there is no unnecessary waste of the assets. In this regard the trustee should have complete access to all records in the possession of the debtor as well as those kept by the Town of Lincoln or its agents, including but not limited to inventory lists, proceeds from any sales of estate property, and expenses of sale.

We order the appointment of a trustee under 11 U.S.C. § 105, being mindful of 11 U.S.C. § 151104, due to the divergent interests of the Town of Lincoln, the debtor, and creditors. Cf. *In re Steak Loft of Oakdale, Inc.*, 10 B.R. 182 (Bankr.E.D.N.Y. 1981) (section 1104(a) does not limit the court's power to appoint a trustee sua sponte when necessary to protect rights of the parties). Accordingly, the United States Trustee is authorized to appoint a trustee forthwith, pursuant to *11 U.S.C. § 151104.*

Enter judgment accordingly.

---

11. Although there is no creditors' committee, it has been represented to this Court and not controverted, that Cournoyer's major unsecured creditors support the position of the Town of Lincoln.