**Arthur J. COURNOYER, d/b/a Cournoyer's Used Truck Parts**

v.

**TOWN OF LINCOLN.**

**Civ. A. No. 85–617 P.**

United States District Court,
D. Rhode Island.

Sept. 12, 1985.

George Prescott, Lincoln, R.I., for plaintiff.

Joseph Little, Providence, R.I., Matthew McGowan, Boston, Mass., Avram N. Cohen, Edward Moses, Lauren E. Jones, Providence, R.I., for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This matter is here on appeal from an opinion rendered on October 12, 1984 by the Bankruptcy Court for the District of Rhode Island, *In re Cournoyer*, 43 B.R. 354 (Bkrtcy R.I.1984). The central issue before that court was whether the provisions in the Bankruptcy Code that impose an automatic stay on the commencement and continuation of judicial proceedings and enforcement efforts once a petition in bankruptcy is filed, 11 U.S.C. § 362(a), operate to bar the Town of Lincoln from proceeding pursuant to an order of the Rhode Island Superior Court, to remove automotive parts and scrap metal from a salvage yard maintained by the appellant in violation of local zoning law. The Town has been attempting to prevent appellant, the debtor in possession in this Chapter 11 case, from operating his salvage yard in a residential area since 1958. Notwithstanding the fact that it has obtained numerous judgments in its favor from the courts of Rhode Island, the Town has been unable to secure appellant's compliance.

The long background of this case, and the rather incredible efforts by this appellant to evade the force of the state court's rulings against him, is described in the opinion below and need not be recounted here.

In its opinion the bankruptcy court held that the Town's enforcement efforts were made exempt from the operation of the automatic stay by the provisions of 11 U.S.C. §§ 362(b)(4)–(5), which create exceptions for the exercise, and enforcement, of police and regulatory powers, and by 28 U.S.C. § 959(b), which requires that any debtor in possession (or bankruptcy trustee) operate and manage the property of the bankrupt estate in conformance with state law. After finding that no automatic stay barred the Town's efforts to clear appellant's land, the court further found that equitable considerations did not weigh in favor of its imposing a stay under the general remedial powers given to it in 11 U.S.C. § 105. However, in order to insure that the removal and disposal of appellant's property be accomplished by the Town so as to protect the value of the estate to the greatest extent possible, the court *sua sponte* ordered the appointment of a trustee to monitor, and to oversee, if necessary, the removal effort.

Appellant raises two issues on appeal. First, he claims that the court erred in finding that the automatic stay did not bar Lincoln's removal of his property. Second, he urges that the court lacked the authority to order the appointment of a trustee on its own motion in this Chapter 11 case, because the Bankruptcy Code requires that there be a request for such appointment by a "party in interest" or the United States Trustee. *See* 11 U.S.C. §§ 1104, 151104. For their part, Lincoln and the United States Trustee (who appointed the trustee ordered by the court) counter that the appeal should be dismissed for appellant's failure to file his brief timely. Lincoln alternatively argues that the court below was correct in finding its removal efforts beyond the reach of the automatic stay. Neither Lincoln, nor the United States Trustee, however, take any position with regard to whether the bankruptcy court was within its rights to order a trustee appointed.

## TIMELINESS

Lincoln and the United States Trustee urge dismissal because they believe appellant failed to comply with Bankruptcy Rule 8009, which requires that an appeal brief be filed, unless excused by the district court, within 15 days of the entry of the appeal on the docket of the district court. Here, the appeal was docketed on November 8, 1984 and, notwithstanding the lack of any extension of time by this Court,

appellant's brief was not filed until April 9, 1985.

By way of explanation, appellant contends that the delay was caused by the actions of the court reporter (at the hearing below) and the bankruptcy court clerk, and that he discharged all the duties imposed on him by the Bankruptcy Rules and should not be penalized for administrative error. It is undisputed here that he filed his notice of appeal within 10 days of the bankruptcy court's entry of judgment, *see* Bankruptcy Rule 8002(a); filed with the bankruptcy court clerk, within 10 days of filing his notice of appeal, a designation of items to be included in the record on appeal, *see* Rule 8006; and promptly delivered to the court reporter a written request for a transcript, which was to be made a part of the record, *see id.*

■ Appellant correctly points out that, under the Bankruptcy Rules, once he took these steps, the duties of completing and transmitting the record shifted to the court reporter and clerk of the bankruptcy court. Rule 8007(a) requires the court reporter to make a written acknowledgement of a transcript request, to record the date of expected completion and to send this document to the bankruptcy clerk. Under that Rule, if more than thirty days are required for completion, the reporter is to seek an extension from the clerk and the clerk is to notify all parties. The clerk is further required to notify the Bankruptcy Judge if the transcript is not filed by the reporter within the time allowed. Rule 8007(b) provides that, once the record is complete for purposes of appeal, the bankruptcy court clerk is to transmit it to the clerk of the district court who is to enter the appeal on the district court's docket and to notify all parties of its action. Under Rule 8009(a) the 15 days briefing period runs from this docketing date.

What appears to have happened here is that the bankruptcy court clerk erroneously transmitted the record to the district court on November 8, 1984—*before* the transcript was completed and incorporated into the record, as per appellant's designation. Appellant argues, accordingly, that the briefing period did not begin to run on November 8 because the record was not "complete for purposes of appeal" within the meaning of Rule 8007(b).

There is no question here that the underlying error was committed by the bankruptcy court clerk and/or the court reporter, to whom the Rules delegate clear duties. From this fact, however, it does not necessarily follow that the appellant was not also errant. Appellant surely *knew* that the transcript was not included in the record originally sent to this Court, for he neither filed a brief within 15 days of the docketing date, nor filed one at any time thereafter until April 9, 1985—the date the transcript was finally sent here. The record discloses no attempts by appellant to inform the bankruptcy clerk of its error, nor attempts to ascertain the status of the record. Notwithstanding the provision in Bankruptcy Rule 8006, requiring that "[a]ll parties shall take any other action necessary to enable the clerk to assemble and transmit the record," appellant chose simply to do nothing.

Whether or not appellant's inaction should properly subject him to dismissal is, as I read the Rules, a matter for this Court's discretion. Rule 8001 states that:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.

Here, there are competing considerations guiding the exercise of my discretion. On the one hand, there is appellant's inaction for five months time. Inaction for so considerable a period would trouble the Court in any case, but it does so especially here; the record shows that appellant has, for thirty years, attempted to forestall, delay, and avoid the inevitable consequences attaching to the state court's ruling that his junkyard is illegally maintained in a residential neighborhood.

On the other hand, notwithstanding the quite plausible claims of prejudice advanced here by Lincoln and by the United States Trustee, neither party moved to dismiss the appeal at any time during the five month period—and did not finally do so until appellant filed, or was about to file, his brief. Nor does the record disclose that either party made any effort to ascertain the status of the appeal.

 Balancing these factors, and mindful of the draconian nature of a dismissal for procedural error, I am going to deny the motion to dismiss. This disposition should in no way signal to appellant, or to his counsel, that the Court approves of the dilatory manner in which this appeal was prosecuted.[1]

## THE MERITS OF THE APPEAL

This appeal raises difficult questions about how to mediate—and how Congress meant to mediate—conflicts between federal bankruptcy law and state and local regulatory requirements. Having carefully reviewed the opinion below, I find that I am in substantial agreement with the bankruptcy court's conclusion that the automatic stay imposed by the Code does not apply to Lincoln's proposed removal action. I cannot agree with the court's finding, however, that it was empowered to *sua sponte* order a trustee appointed in this Chapter 11 case.

The question whether the state court order instructing Lincoln to remove the junk from appellant's land falls within the class of actions automatically stayed by the Code is largely a question of statutory interpretation, In pertinent part, the Code provides:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition...operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...

(b) The filing of a petition ... does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor; ...

**1.** I am especially troubled by the evidence submitted by the United States Trustee and Lincoln, in support of their dismissal motion, that suggests that appellant's counsel actually received a copy of the transcript as early as January 22, 1985. This evidence is in the form q (1) a court reporter's bill dated January 22, 1985 and stamped "paid" by appellant's counsel's law firm on March 8, 1985, and (2) an affidavit sworn by the reporter, stating that the bill evidences the fact that the transcript was, indeed, sent to appellant's counsel on January 22, 1985 and paid for on March 8. In response, appellant has moved to strike this evidence on the ground that it is not properly before this Court, and alternatively offers that, if put to his proof, appellant's counsel would show that he paid for the transcript in March, but did not receive it until April 7, 1985—the day before it was received by the bankruptcy court.

Appellant's claim that this evidence is not properly before the Court because not part of the record below lacks any foundation in law or logic, and I am in agreement with the Magistrate's July 26, 1985 ruling denying the motion to strike. Because the submitted materials concern events that transpired after the case below was closed—events surely relevant to this dismissal motion—it is plain that they may be considered here.

In the interests of expeditiously disposing of this matter, I am not going to resolve the factual dispute created by the diametrically opposed representations by the court reporter on the one hand, and appellant's counsel on the other, as to the date on which counsel received the transcript. Were I to do so, severe sanctions would accompany a finding that either party has sought deliberately to mislead this Court.

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ...

Appellant's main objections to the interpretation given these provisions by the court below are twofold: first, he believes that there is no exception, for exercises of police power or otherwise, to the automatic stay imposed by § 362(a)(3) against "any act to obtain possession of property of the estate ...," and that Lincoln's proposed removal is such an act; second, he urges that the recent decision by the United States Supreme Court in *Ohio v. Kovacs,* —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), decided after the bankruptcy court's opinion was filed, establishes that the judgment of the Rhode Island Superior Court that is sought to be enforced here is a "money judgment" within the meaning of § 362(b)(5) and is not, therefore, exempted from the automatic stay. I examine these arguments in turn.

█ Appellant is surely correct in arguing that, by its terms, the § 363(a)(3) stay against acts to obtain possession or control of estate property admits of no exceptions. *See, e.g., In Re Porter,* 42 B.R. 61, 67 (Bkrtcy.N.D.Tex.1984); 2 Collier on Bankruptcy § 362.05[4], at 362–42 (1984). The more difficult question here is whether the proposed removal and disposal of appellant's salvage parts is such an act.

█ As the opinion below points out, it is clear, and courts have frequently found, that §§ 362(b)(4) and (b)(5) permit the enforcement of equitable judgments obtained by governments, pursuant to regulatory powers, even where such enforcement will necessarily affect property in, or diminish the value of, the estate. *See, e.g., In re*

*Cousins Restaurant,* 11 B.R. 521 (Bkrtcy. W.D.N.Y.1981) (permitting enforcement of zoning regulation where it would force restaurant debtor to stop operating); *In re Porter, supra,* 42 B.R. at 64–67 (permitting enforcement of order padlocking debtor's premises, and denying him use thereof, where premises had been found to be used for prostitution and to constitute a civil nuisance); *In re Thomassen,* 15 B.R. 907, 8 B.C.D. 530 (B.A.P.9th Cir.1981) (permitting revocation of debtor's medical license where debtor was found to have committed acts of malpractice); *In re Colonial Tavern, Inc.,* 420 F.Supp. 44 (D.Mass.1976) (permitting suspension of liquor license where debtor was found to have operated business in violation of local laws regulating closing hours). Certainly, the acts permitted to proceed in these cases *could* be characterized as acts to obtain "posession" or "control" of estate assets, just as Lincoln's proposed removal and disposal of appellant's salvage materials *could* be so characterized.

█ In my view, however, such a characterization is inappropriate, and has been rejected, because of the justification underlying the governmental action in these cases. As is true here, the sole motivation for the official action in these cases is to stop the debtor from operating a business in violation of state or local law. In none of these cases has the government any pecuniary interest in the debtor's property, nor does the law under which it proceeds attempt to protect any other party's pecuniary interest, *cf. State of Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768 (8th Cir. 1981), *cert. den.,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). Nor can the government's efforts reasonably be said to represent attempts to arrogate to itself legal "possession" or "control" of estate property. While such governmental actions may result in depriving the debtor's estate of possession of its property, it does not follow that these actions necessarily fall within the scope of § 362(a)(3). This is made especially apparent by the fact that Congress has decreed elsewhere in the

United States Code that "[a] debtor in possession shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated ..." 28 U.S.C. § 959(b); *see generally In Re Quanta Resources Corp.,* 739 F.2d 912 (3rd Cir.1984), *cert. granted sub nom. Midlantic National Bank v. New Jersey Dept. of Env. Protection,* —— U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 319 (1985). Viewing the language of § 362(a)(3) in the context of §§ 362(b)(4) and (b)(5), and of 28 U.S.C. § 959(b), it is clear that Congress meant to exempt from the stay governmental acts necessary to end a continuing violation of *valid* regulatory laws, *cf. Matter of National Hospital & Institutional Builders,* 658 F.2d 39 (2d Cir.1981)—even where the estate is forced to cede possession of some of its property. Indeed, the language of § 959(b) suggests to me that a bankruptcy court is obligated to permit such enforcement actions to proceed.

Nor can there be any doubt that Lincoln's court-ordered removal actions are necessary to secure appellant's compliance with state law. The record makes amply clear that no alternative measure is available to abate the longstanding violation of the town's zoning laws. Holding appellant in criminal contempt for failure to obey the injunction against his maintenance of the junk yard in its current location—an option recognized by all parties, appellant included, to be exempt from the automatic stay to be fully available here—would not remedy the continuing violation. Were such a course pursued, or were appellant ordered by the bankruptcy court to stop transacting business on the site, the offending objects would remain in place—much to what the record demonstrates to be the consternation of appellant's neighbors. Likewise, the uncontroverted evidence is that, notwithstanding considerable efforts, no appropriate site at which to relocate the junk yard (or presumably to store its contents) has been found by appellant or the Town,

and there is no reasonable likelihood that one will be found. And, appellant candidly testified that, no such site being available, he intends fully to continue to operate the junk yard at the current site. In the face of this evidence, it is reasonable to conclude that no measure short of removing and disposing of appellant's property will halt the zoning violation.

Turning to the question of what effect should be properly accorded here the United States Supreme Court's recent decision in *Ohio v. Kovacs, supra,* I find that the decision supports, not undermines, the bankruptcy court's conclusion that no automatic stay operate against Lincoln in this case. *Kovacs* involved a debtor in the waste disposal business who, prior to filing in bankruptcy, had been found to have violated state environmental law, and had been enjoined by the Ohio courts from disposing of any further wastes on the site or causing further pollution, and ordered to clean up the site and to pay the state money damages. When the debtor failed to comply with this injunction, a receiver was appointed to take control of the debtor's assets and to effectuate the judgment by cleaning up the site. When the debtor subsequently filed in bankruptcy, the state sought a declaratory judgment that the clean up obligation was not a debt dischargeable in bankruptcy within the meaning of 11 U.S.C. § 101(11).

The Court held that the obligation was a dischargeable debt because it was, like the money damages awarded in the environmental suit, a judgment that could be satisfied by the debtor only through the payment of money. It was clear that what the state-appointed receiver sought was "the money to defray clean up costs," 105 S.Ct. at 710. It was on this basis that the Court found the clean up obligation to be a dischargeable money judgment. Although the question of whether the receiver's actions were subject to the automatic stay was not before the Court,[2] appellant be-

---

**2.** In earlier proceedings in *Kovacs,* the Sixth Circuit had found the automatic stay applicable to the receiver's actions because it believed

those actions to be in the nature of collection. *In re Kovacs,* 681 F.2d 454 (6th Cir.1982). The Supreme Court vacated and remanded that

lieves that the reasoning in *Kovacs* requires that the state court order in this case be characterized as enforcing a "money judgment" and be therefore found to be automatically stayed, *see* 11 U.S.C. §§ 362(a)(2); 362 (b)(5).

Appellant argues that, like *Kovacs*, this is a case where a government "creditor" seeks impermissibly to "charg[e] a debtor's estate with the cost of enforcing a pre-petition obligation," Mem. In Support of Motion for Stay Pending Appeal, at 9. He likens himself to the debtor in *Kovacs* by noting that the Superior Court's order has the effect of "dispossessing" him, *see* 105 S.Ct. at 710, 712, and literally requires that he bear the expenses of the governmental effort. For two reasons, appellant's analogy to *Kovacs* misses the mark.

First, *Kovacs* did not purport to hold that whenever a government enforcement effort carries costs for a bankrupt estate, the government is a "creditor" seeking to enforce a "money judgment." To the contrary, the Court was at pains to separate the debtor's obligation to satisfy the Ohio court's "negative order to cease polluting," *id.* at 708, from the "affirmative order to clean up the site," *id.*, and to make clear that:

> we do not hold that the injunction against bringing further toxic wastes on the premises or against any conduct that will contribute to the pollution of the site or the State's waters is dischargeable in bankruptcy; we here address, as did the Court of Appeals, only the affirmative duty to clean up the site and the duty to pay money to that end. Finally, we do

not question that anyone in possession of the site—whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy trustee—must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.

*Id.* at 711–712.

It was because the Court conceived of the clean-up obligation as one wholly ancillary to, and unnecessary to achieve compliance with, the debtor's obligation to cease his illegal conduct that the Court characterized the "affirmative" injunctive obligation as a money judgment.[3] Here, no such separability exists.

■ Second, in contrast to *Kovacs*, the appellant is not going to be "dispossessed" here. The record plainly suggests, and the opinion below assumes, that the proceeds of the sale of appellant's property will be returned to him—less the expenses of removal and sale. There is in this drama no figure comparable to the *Kovacs* receiver, whose task it was to take possession of the debtor's assets so that they might be applied to satisfy an independent obligation. Appellant nonetheless protests that he will be deprived of the full "value" of his property if the Town is permitted to sell it, because it would be worth more if sold by him in the ordinary course of business than if sold by the Town to other junk dealers, or as scrap metal (which commands a lesser price on the market). What appellant misunderstands, however, is that it is not

judgment after the state moved for a declaratory judgment as to the dischargeability of the clean up obligation, 459 U.S. 1167, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983), and, as of the time of the Court's ultimate opinion in *Kovacs,* no action had been taken on the remand by the Sixth Circuit. *See* 105 S.Ct. at 707, n. 2.

**3.** Indeed, the Court expressly distinguished the decision in *Penn Terra, Ltd. v. Department of Resources,* 733 F.2d 267 (3rd Cir.1984), where the Third Circuit held that the automatic stay

did not apply to a state court's order requiring a bankrupt to comply with environmental laws— an order that apparently obligated the debtor to perform certain land-filling obligations. The Court noted that in the *Penn Terra* case, "there had been no appointment of a receiver who had the duty to comply with state law and who was seeking money from the bankrupt," 105 S.Ct. at 711, n. 11. The absence of any effort to collect money from appellant here likewise distinguishes this case from *Kovacs.*

open to him under local law—and therefore not open to him under 28 U.S.C. § 959(b)—to continue operating his junk yard in a residential neighborhood. One might have expected that, given nearly thirty years of litigation and numerous court orders in the Town's favor, this would have been clear to the appellant. Given this bottom line, it is wholly illusory to assign a "value" to his business that is based on the assumption of continued violation of local law. On the record before me, which establishes that relocation is impossible, the value of the appellant's inventory can only be its highest value to the market now willing to purchase it—whether it be as wholesale parts, as scrap, or otherwise—less the expense of removing it from its illegal location.

As for any objections by appellant to the lack of assurance that Lincoln will secure the highest price currently available for his inventory, I find these ironic in light of appellant's challenge in this appeal to the bankruptcy court's order that a trustee be appointed. The stated purpose of that order was to assure "that the method of removal and disposal of inventory to be employed by the Town of Lincoln is prudent and reasonable, and that there is no unnecessary waste of the assets." 43 B.R. at 362. Thus, appellant rejects a source of the very protection to which he claims he is entitled. True, it would require some depletion of estate assets [4] to finance a trustee's activities, but on balance, the appointment would appear to inure to the benefit of the estate.

However, while the appointment of a trustee may have wisdom to commend it in this case, appellant is nonetheless correct in arguing that the Bankruptcy Code does not permit the judge in a Chapter 11 case to act on his own motion. Sections 1104 and 151104 collectively require, by their terms, the request of a "party in interest" or the United States Trustee. *See Matter of Mandalay Shores Co-Op Housing Ass'n*, 22 B.R. 202 (Brktcy E.D. Fla.1982) ("Since the Court is clearly not a 'party in interest,' it may not, on its own motion, order the appointment of a trustee [in a Chapter 11 proceeding]") (citation omitted); *cf. In Re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir.1984). No such request was made here. While the court below noted that this case "has more of the earmarks of a liquidation than a reorganization proceeding," 43 B.R. at 362, and it is true that a bankruptcy court has more latitude with respect to trustee appointment in Chapter 7 liquidation proceedings, *see* 11 U.S.C. § 701, the record before me fails to demonstrate that the case was ever formally converted to Chapter 7 status—an action which, under the Code, may also take place only upon the request of a party in interest, *see* 11 U.S.C. § 1112(b); *In Re Gusam Restaurant Corp., supra.* And, the court's belief that it was separately empowered to appoint a trustee by the general remedial powers given to it under 11 U.S.C. § 105(a) appears to be undermined by § 105(b), which states that "[n]otwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title." Although it is unclear whether and to what extent, the Code makes a distinction between a "trustee" and a "receiver," *see* 11 U.S.C. § 101(10), the legislative history accompanying § 105(b) strongly suggests that its purpose is to prevent the court-ordered appointment of a trustee in a Chapter 11 case where the formal prerequisites of §§ 1104 and 151104 are not met. *See* Sen.Rep. No. 95–989, 95th Cong., 2d Sess., at 29 (1978); U.S. Code Cong. & Admin. News 1978, 5787. *Cf. In re Tyler*, 18 B.R. 574 (Bkrtcy S.D.Fla.1982) (appointment of trustee in

---

**4.** With regard to the estate's assets, the bankruptcy court took note of the fact that the appellant is not insolvent. His sworn schedules disclose assets valued by him at $217,000 and debts of $18,000. 43 B.R. at 361. The court also noted that, although there is no creditor's committee in this case, "it has been represented to this Court, and not controverted that Cournoyer's major unsecured creditors support the position of the Town of Lincoln," *id.* at 361, n. 11.

Chapter 11 case is "extraordinary remedy").

In the face of this very clear language in the Code, I am constrained to find that the bankruptcy court erred in appointing a trustee on its own motion. One might well ask why, six years after this Chapter 11 action had been filed, no creditor's committee had been appointed by the judge. Had this been done, it is likely that this problem would not have materialized, for the creditors in this case might well have taken action to protect the assets of the estate.[5] Given the tortuously long history of this case, however, and the seemingly endless series of legal maneuvers employed by appellant Cournoyer and his counsel to aver the inevitable day of reckoning, I cannot now remand this case for further proceedings. Appellant has had more opportunities than he deserved to take appropriate action and, dating to 1958, he has not done so. I therefore rule that the decision below shall be affirmed in all respects, except that the appointment of a trustee shall be reversed.[6] In order to provide some protection to the estate, however, I rule that the Town, in removing and disposing of appellant's inventory, shall do so in a manner reasonably calculated to bring a fair market value for that inventory. If there is any question as to the method employed, the appellant may petition this Court, and a hearing will be promptly set down. I will retain jurisdiction of this appeal to that limited extent, pending the completion of the clearance of the land, because I find it necessary to do so in order to ensure the expeditious disposition of this matter. *See* 28 U.S.C. § 157(d); *Carlton v. Baww, Inc.*, 751 F.2d 781, 787–788 (5th Cir.1985); *In re White Farm Equipment Co.*, 42 B.R. 1005, 1009 (N.D.Ohio 1984); *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984).

5. This is especially so in light of the bankruptcy court's notation of the fact that appellant's creditors supported the Town's position, *see supra* note 4.

6. Accompanying Cournoyer's appeal of the bankruptcy court's ruling was a motion to stay that court's judgment pending my decision on the appeal—a motion that had been denied in

the first instance by the bankruptcy court on October 16, 1984. I have not ruled on that stay motion and, having now entered my decision on the merits of the appeal, find that it is unnecessary to do so. I therefore pass that motion as moot, without prejudice to any party's right to make any further motions for stay permitted by the Bankruptcy Rules.