In re CORPORACION DE SERVICIOS MEDICOS HOSPITALARIOS DE FAJARDO, Debtor.

CORPORACION DE SERVICIOS MEDICOS HOSPITALARIOS DE FAJARDO, Plaintiff/Appellee,

v.

Hon. Luis IZQUIERDO MORA, representing the Department of Health, Defendant/Appellant.

CORPORACION DE SERVICIOS MEDICOS HOSPITALARIOS DE FAJARDO,

v.

DEPARTMENT OF HEALTH OF the COMMONWEALTH OF PUERTO RICO.

CORPORACION DE SERVICIOS MEDICOS HOSPITALARIOS DE FAJARDO, Petitioner/Appellant,

v.

Hon. Luis IZQUIERDO MORA, representing the Department of Health, Respondent/Appellee.

CORPORACION DE SERVICIOS MEDICOS HOSPITALARIOS DE FAJARDO, Petitioner/Appellee,

v.

Hon. Luis IZQUIERDO MORA, representing the Department of Health, Respondent/Appellant.

Bankruptcy No. 85–553(B).
Adv. No. 85–229.
Civ. Nos. 85–2029 (JAF), 86–0363 (JAF) and 86–0364 (JAF).
Misc. No. 86–0030 (JAF).

United States District Court, D. Puerto Rico.

April 15, 1986.

---

922

Maria Luisa Contreras, San Juan, P.R., for petitioner-appellant.

Virgilio Méndez Custas, Rio Piedras, P.R., for respondent-appellee.

## OPINION AND ORDER

FUSTE, District Judge.

The Department of Health of the Commonwealth of Puerto Rico (the Department), as an arm of the local Executive Branch of Government[1] is authorized by law to enter into commercial transactions with private medical entrepreneurs. The law authorizes the Department and the "Administración de Facilidades y Servicios de Salud" (AFASS) to contract out the management, use, and operation of government-owned hospitals to private entities. 24 L.P.R.A. Secs. 331–332a; 337–337m.

Pursuant to the mentioned statutory authority, on December 1, 1982 the Department stepped down from its sovereign position and, jointly with AFASS, negotiated such a contract for the management and operation of the Fajardo Subregional Hospital, located in Fajardo, Puerto Rico.[2] The exclusive right to operate said hospital was

---

1. Commonwealth of Puerto Rico Constitution, art. IV, sec. 6, Vol. 1 L.P.R.A.

2. Copy of the following documents were included· as part of the record on appeal: (a) complaint filed before the Superior Court of Puerto Rico; (b) judgment entered by said court; (c) copy of the contract for administration of the hospital; (d) petition for review before the Supreme Court of Puerto Rico; and (e) others as designated in the bankruptcy record on appeal.

awarded by contract to "Corporación de Servicios Médicos Hospitalarios de Fajardo, Inc." (Corporación), a private corporation organized and existing under and by virtue of the laws of the Commonwealth of Puerto Rico.

The contract specifically provided that one of its goals was to assure the availability of efficient health services for the Fajardo subregion population and to establish a positive image for the hospital and the services rendered therein by retaining highly-qualified professional personnel.

The contract further provided that the corporation was to organize, administer, and operate the hospital as per contract guidelines, all pursuant to procedures to be submitted to the Department by Corporación. This included dealing with personnel problems, systems for medical records, per diems, nursing services, maintenance, sanitation, staffing patterns, invoicing and collection of moneys, and other financial aspects of the hospital's operation.

Under the terms of the contract, the Department agreed to pay Corporación a fixed annual fee of approximately $6,300,000 due on July and January of each year. This annual fee was renegotiated at a later date. It went up as high as $7,000,000 in the year 1983. The December 1, 1982 contract between the Department and AFASS and Corporación had a duration of ten years, the expiration date being fiscal year 1992–1993.

During the period under which Corporación became the operator and manager of the hospital, said institution received a three-year accreditation by The Joint Commission on Accreditation of Hospitals, as well as an accreditation by the U.S. Department of Health and Human Services. The accreditation of the Joint Commission accrued in November, 1984. The federal accreditation was awarded after the hospital was inspected in October, 1985. The hospi-

tal was found in compliance with all Medicare requirements as conditions for participation in said federal program.[3]

At some point in time in 1984, and pursuant to contract terms and conditions, the Department decided to conduct an audit of the Fajardo Subregional Hospital. The certified public accountant firm of Coopers & Lybrand was commissioned to conduct the audit. This could not be accomplished due to inadequate financial data kept by Corporación.

A change in political administration took place in Puerto Rico as a result of the November, 1984 general elections. During February and March, 1985, the Department, through the newly-appointed Secretary of Health, Dr. Luis Izquierdo Mora, commissioned a different firm of certified public accountants to audit the subregional hospital, that is to say, to carry out the job originally assigned to Coopers. On this occasion, in addition to the intervention of the auditing firm of Arthur Andersen & Co., the Department appointed an advisory team of professionals to concurrently report on the contract and its performance. This group was composed of lawyers, physicians, economists, and employees of the Department.

Based on the findings of Arthur Andersen & Co. and the recommendations of the "ad hoc" committee appointed by the Department, litigation was commenced by the Department and AFASS against Corporación by the filing of a civil action before the Superior Court of Puerto Rico, San Juan Part, on April 22, 1985. Although the caption of the local filing identifies the suit as being one for declaratory judgment and injunctive relief, the allegations as such did not request declaratory relief. The complaint sought the termination of the contract for noncompliance of terms and conditions on the part of Corporación. Injunctive relief seeking the return of the proper-

---

**3.** *See* Bankr.Ct. Order (Jan. 24, 1985) at 21. The Department objected to the consideration by this Court on the matter whether the Medicare standards were or not complied with. We take notice of such finding of fact by the bankruptcy court, since we do not find it contravenes the clearly erroneous standard so as to set aside the same. Rule 8013, Bankruptcy Rules; *Richard Briden v. Foley,* 776 F.2d 379, 382 (1st Cir.1985).

ty to the hands of the Department was also requested.

On May 10, 1985, Corporación filed a petition for reorganization under the provisions of Chapter 11 of the Federal Bankruptcy Code, 11 U.S.C. Secs. 1101–1174.[4] As expected, the bankruptcy court became aware of the existence of local proceedings. Notice of such proceedings was first given informally to the bankruptcy court. This was followed by an informative motion which, quoted in its pertinent part, reads as follows:

### Informative Motion

Comes now the Secretary of Health of the Commonwealth of Puerto Rico through counsel and informs:

Pursuant to instructions from this Honorable Court, we have inquired in the Superior Court of Puerto Rico, pursuant to a motion filed on June 10, 1985, and have been advised by that Court that the Hon. Judge Polo is available to understand in the matter (sic) regarding the controversy filed before it by the Department of Health against the debtor during the week of June 17 through June 21, 1985.

Respectfully submitted, on this 11th. day of June, 1985.

On the basis of the informative motion and without having the benefit of a copy of the local complaint or being aware of the extent of the remedy there requested, the bankruptcy court entered, on June 12, 1985, an order of abstention regarding the local proceeding. The bankruptcy court stated: [5]

*We are advised that the Secretary of Health alleges in his Request for Declaratory Judgment that he is entitled to the relief requested under the contract between the parties and in accordance with the laws of the Commonwealth,* and we understand that the matter does not involve the application of the Federal Bankruptcy Code (11 USC) nor is same a "core proceeding" within the meaning of that term as used in 28 USC 157(b)(2). The policy of the Federal Bankruptcy Code, as expressed in 28 USC 1334(c)(2), is that in circumstances such as these, the federal court should abstain from hearing the proceeding. *Such abstention is not a waiver of the exclusive jurisdiction over the property*

---

**4.** A filing in bankruptcy has the effect of consolidating all of the debtor's property wherever located in what is known as the estate in bankruptcy. 11 U.S.C. Sec. 541(a). *Mitchell Excavators v. Mitchell,* 734 F.2d 129, 131 (2nd Cir. 1984). The relief provisions of the Bankruptcy Code define property in broad terms, 11 U.S.C. Sec. 541(a)(1)–(7). *In the matter of Terry Grosslight,* 757 F.2d 773, 775 (6th Cir.1985). As a general rule, the assets and/or liabilities of the estate in bankruptcy are covered and protected by the automatic stay provisions of 11 U.S.C. Sec. 362(a). This mechanism serves as a protective shield for the debtor against the following types of actions:

(1) *the commencement or continuation,* including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) *the enforcement,* against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

.... (emphasis supplied).

**5.** Even a cursory examination of the local pleading would have alerted the bankruptcy court of the fact that the local proceeding was directed to terminate the contract and to dispose of the debtor's main asset through termination. Obviously, the bankruptcy court acted in good faith in relying on the representations that the matter before the local court was one of declaratory judgment. This is confirmed by the nonwaiver language contained in the abstention order regarding 28 U.S.C. Sec. 1334(c) and 11 U.S.C. Sec. 362(a).

*of the debtor estate under 28 USC 1334(d) nor the granting of relief from the automatic stay of 11 USC 362(a) except as expressly indicated by this order.*

We consider the Secretary of Health's informative motion dated June 11, 1985, to be a timely motion for this court to abstain pursuant to Sec. 1334(c)(2). We do abstain. (emphasis supplied).

The Department continued its offensive against Corporación. Being fully aware of debtor's bankruptcy proceedings, it notified the debtor that its license to operate the hospital (Lic. No. 4 of July 1, 1984) would be revoked in thirty (30) days for alleged failure to comply substantially with Law No. 101, of June 26, 1965, as amended, and the regulations thereunder. The Department, in its dual role as the moving party and as the quasi-judicial body entrusted to make the final determinations on the issue, alleged that Corporación's operation of the hospital was creating a grave risk of health, security, and threat to the life of the patients. An administrative hearing was set by the Department to take place before a hearing examiner on July 3, 1985. The same was continued to July 8, 1985.

Once again, the matter was brought to the attention of the bankruptcy court. The debtor, faced with the ongoing bankruptcy proceeding and the local suit, over which the bankruptcy court had decided to abstain, found itself litigating in a third forum. The debtor requested that the administrative process be stayed. The bankruptcy court decided to look into the matter further and conducted *sua sponte* an inspection of the hospital premises. After careful consideration of the testimony presented at a hearing and taking into consideration the results of the inspection realized, the bankruptcy court determined that the hospital was "clean, modern, and an apparently-efficient facility," and that the license revocation proceeding was within the meaning of 28 U.S.C. Sec. 157(b)(2)

(core proceeding). An order for a stay was issued under 11 U.S.C. Sec. 105(a).[6] This order was entered on August 2, 1985. The order stayed the Department's administrative proceeding to revoke the hospital's license while the civil suit for injunctive and declaratory relief pending at the Superior Court of Puerto Rico continued its course.

On Friday, November 11, 1985, the Superior Court of Puerto Rico terminated the contract between the Department, AFASS and Corporación, entered judgment, and decreed injunctive relief ordering the immediate return of the property of the Fajardo Subregional Hospital to the Department. That same day, a local marshal notified the judgment personally to the parties. On Saturday, November 12, 1985, Department officials assisted by law-enforcement personnel, effectively evicted and ejected Corporación and its key personnel from the Fajardo hospital. In the takeover, the Department not only took possession of the hospital, but also froze other vital assets of the estate, such as accounts receivable, personnel contracts, financial records, and equipment.

Confronted with the immediate takeover of its sole business operation and main asset (the contract), Corporación filed an adversary proceeding, No. 85–350, before the bankruptcy court, on November 5, 1985, requesting an injunction against the Department and a stay of the judgment entered by the Superior Court. Corporación, as debtor, also requested the turnover of the Fajardo hospital and the return of other property of the estate previously taken over by the Department. The adversary proceeding became moot, inasmuch as the bankruptcy court, after a hearing, backtracked and allowed the debtor to assume the contract which the Superior Court had terminated, all under 11 U.S.C. Sec. 365. Although the factual scenario developed at the hearing on the issue of the assumption of contract established that the debtor's

6. We do not think that the bankruptcy court had to resort to 11 U.S.C. Sec. 105(a). If the administrative proceeding, as defined by the bankruptcy court, was in the nature of a pecuniary inter- est adversely affected, then the automatic stay provisions of 11 U.S.C. Sec. 362 would have rendered the matter moot for Section 105 action.

uncontradicted evidence was to the effect that the items of default found by the Superior Court had been cured or were in the process of being cured, the bankruptcy court stayed the order of assumption of contract since the bankruptcy judge felt that an appeal to the District Court was imminent. The order staying the assumption of contract was entered on February 18, 1986. Corporación, as debtor, fearing irreparable harm, filed a miscellaneous proceeding before this Court, No. 86–0030, requesting emergency relief on the issue of the stay.

At this time, we have before our consideration three (3) bankruptcy appeals and the miscellaneous emergency request, dealing with the same nucleus of facts, to wit:

1. Appeal by the Department, Civil No. 85–2029 (JAF), seeking review and reversal of the order entered by the bankruptcy court on August 2, 1985, enjoining the Department from further prosecuting the license revocation proceeding against Corporación.

2. Miscellaneous proceeding No. 86–0030, originally assigned to Judge Laffitte and reassigned to the undersigned, where Corporación seeks emergency relief over the bankruptcy court's decision to stay the execution of its order of assumption of contract.

3. Appeal of the Department, Civil No. 86–0363 (JAF), where it is requested that the bankruptcy court's order of January 24, 1986, allowing the assumption of contract, be reviewed and reversed.

4. Appeal by Corporación, Civil No. 86–0364 (JAF), requesting relief and reversal of the bankruptcy court's order of February 18, 1986, granting a stay of execution of its order of assumption of contract. We note for the record that upon examining dockets 85–2029 (JAF) and 86–0030 (JAF), it was evident that this controversy needed immediate court attention. On March 12, 1986, we ordered the bankruptcy court to promptly transmit to this court the appeals now identified by Civil No. 86–0363 (JAF) and 86–0364 (JAF) so as to treat this controversy as a whole. Terms were short-ened, oral argument was heard, and briefs were requested. The Department made its filings and Corporación elected to submit the matter on the record on and short memoranda. As the matter now stands, the bankruptcy court abstained to be later surprised by a local judgment that terminated the contract or main asset of debtor. On the one hand, debtor claims that the local judgment is null and void and that the bankruptcy court could order the assumption of the contract even in light of the local judgment. On the other hand, the Department argues that the local judgment terminated the contract and, thus, there is no contract that the debtor could assume. The Department conceded during oral argument that the local decision is adverse to the debtor and its intent to rehabilitate and reorganize under the bankruptcy laws. The Department feels that local considerations of public policy and police power override the interests of the federally-protected bankruptcy reorganization. We have examined this record and proceed to decide the issues accordingly.

## I.

■ What initially brought about the problematic course of this litigation over the estate of a debtor seeking reorganization under Chapter 11 of the Bankruptcy Code was the bankruptcy court's decision to abstain under 28 U.S.C. Sec. 1334(c)(2). In so doing, the bankruptcy court concluded that the contract litigation before the Superior Court of Puerto Rico was not a "core proceeding" under 28 U.S.C. Sec. 157(c). The determination by the bankruptcy court is a matter of law which does not bind this Court. The same is subject to a *de novo* review as it pertains to the end result. *In re Earl Williams Teichman, Debtor,* 774 F.2d 1395, 1397 (9th Cir.1985); *Caswel v. Lang,* 757 F.2d 608, 609 (4th Cir.1985). The Department claims that a decision to abstain is not reviewable by appeal or otherwise. 28 U.S.C. Sec. 1334(c)(2). The statute so provides. However, this does not mean that an erroneous end result should be perpetuated because

of the nonreviewability language contained in section 1334. The decision to abstain under section 1334(c)(2) is not being reviewed herein. We only pass upon the bankruptcy judge's jurisdictional authority to abstain. Such revision is proper. *In re Cash Currency Exchange, Inc.,* 37 B.R. 617 (1984), *aff'd,* 762 F.2d 542, 545 (7th Cir.), *cet. denied,* —— U.S. ——, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985).[7] We find that the soundness and legality of a decision allowing a debtor to assume a contract entered after the bankruptcy court abstained and allowed a local judgment of termination of contract to accrue is a matter of first impression under the Bankruptcy Code of 1984. We are required to elaborate on the jurisdictional aspect, the nature of the core proceedings, the dispositions of automatic stay, and the claimed exceptions based on public policy and police power considerations.

## II.

The provision of 28 U.S.C. Sec. 1334 was amended as part of the Bankruptcy Amendments and Federal Judgeship Act of July 10, 1984, 11 U.S.C. Secs. 1101–1174. This section substituted former section 1471 of title 28, U.S.Code, which had been declared unconstitutional in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 84–87, 102 S.Ct. 2858, 2878–80, 73 L.Ed.2d 598 (1982). Said case held that bankruptcy judges are not article III judges and, therefore, cannot validly adjudicate claims or causes of action constitutionally reserved for article III judges. It followed that "[c]ertain private state law

claims, when adjudicated within the federal system, must be decided by article III courts."[8] *See e.g., In re White Motor Corp.,* 704 F.2d 254 (1st Cir.1984); *In re Pine Associates, Inc.,* 733 F.2d 208 (2nd Cir.1984). However, the traditional legislative foundations for our federal bankruptcy jurisdiction remained unchanged. *In re Kaiser,* 722 F.2d 1574 (2nd Cir.1983).

As stated before, the jurisdictional fountainhead for bankruptcy matters is 28 U.S.C. Sec. 1334.[9] Section 1334(a) vests original and exclusive jurisdiction in the United States District Courts over all cases arising under the Bankruptcy Code. The word "case" is a term of art and comports with the usage in the Bankruptcy Code and the Bankruptcy Rules. "Case" comprises the entire chapter 7, 9, 11, or 13 type of case. These are commenced pursuant to 11 U.S.C. Secs. 301, 302, or 303, Bankruptcy Code, by the filing of a "petition". Section 1334, in its subsections (a) and (b), retained the same wording of its 1978 predecessor, 28 U.S.C. Sec. 1471. However, Congress, in enacting a constitutional bankruptcy scheme which would implement the holding of *Marathon,* elected to add the relevant provision of section 1334(c), which reads:

(c)(1) Nothing in this section prevents a district court *in the interest of justice, or in the interest of comity with State courts or respect for State law,* from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion *of a party in a proceeding based upon a State law claim or State law cause of action, re-*

---

7. Otherwise, we would have to simply abide by a result that offends traditional notions of bankruptcy law recognized as being of uniform and national importance. Because of the nature of the subject matter, bankruptcy laws can be said to preempt the field. The preemption is not absolute. The boundaries of such preemption are contained in the Bankruptcy Code. This principle has been recognized by the Supreme Court of Puerto Rico since the year 1906. *Ex parte Coll,* 11 D.P.R. 51 (1906).

8. House Con.Rep. 882, 98th Cong.2d sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Ad. News 576, 601–06.

9. *See* Constitution of the United States, art. I, sec. 8 cl. 4: "The Congress shall have power to ... establish ... uniform laws on the subject of bankruptcies throughout the United States." It has been held that the power of Congress to establish uniform laws on the subject of bankruptcies is unrestricted and paramount. *In re Cash Currency,* 37 B.R. 617 (N.D.Ill.), *aff'd* 762 F.2d 542 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *In re Kaiser,* 722 F.2d at 1577.

*lated to a case under* title 11 *but not arising* under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy. (Emphasis supplied).

A recent interpretation of the congressional intent behind the amendment which led to section 1334 holds that:

[T]he emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself leave us with no doubt that Congress intended to grant the district courts broad jurisdiction in bankruptcy cases.

*In re Salem Company,* 783 F.2d 626, 634 (6th Cir.1986).

The norm is clear. Federal Courts are to exercise broad jurisdiction in matters arising in a bankruptcy context either "under" or "related to" Title 11, U.S.Code. *E.g., In*

re *Adams,* 761 F.2d 1422, 1424 (9th Cir. 1985).

The abstention provision which Congress added as part of the implementation of bankruptcy jurisdiction is subsection (c) of section 1334. Subsection (c)(1) is a general discretionary abstention section. Subsection (c)(2) is mandatory in its terms. The provision in question here is subsection (c)(2). The bankruptcy court specifically expressed that it had abstained mandatorily, there being no discretion.[10]

■ The congressional directive for mandatory abstention under section 1334(c)(2) requires a threshold inquiry into three (3) requirements.[11] One of the requirements for abstention is that the case should be one *"related to* the proceedings of title 11," *not one arising* under. (Emphasis supplied).[12] Therefore, it is imperative not to confuse the term "related proceeding" with "core proceeding" when dealing with a potential abstention decision. A core proceeding[13] is not equivalent to the term "related to" cases under Title 11, 1 *Collier on Bankruptcy* para. 3.01(ii) at 3–26 (1985). We hold that the suit by the Department against Corporación is an action *arising under,* (core proceeding) case and not a *related proceeding.* The Department's lawsuit before the Superior Court was couched on an explicit, unequivocal request for a judgment of termination of contract. Injunctive relief came into play simply to

---

**10.** The Department alleges that if section 1334(c)(2) is not applicable as a basis for abstention, then the bankruptcy court's abstention order is still valid under section 1334(c)(1). We are not prepared to so find. The order of abstention was predicated on a mandatory abstention situation. 28 U.S.C. Sec. 1334(c)(2). There is no indication in the bankruptcy court's Order of June 12, 1985, quoted at page 924 of this opinion, that the bankruptcy judge was thinking in terms of (c)(1) (discretionary abstention).

**11.** Also, it has been expressed that in order to abstain, the type of case should be taken into consideration (i.e. Chapter 7 liquidation or a chapter 11, 13 reorganization). *Symposium on Bankruptcy: Jurisdiction and Procedure under the Bankruptcy Amendments of 1984,* 33 Vand.L. Rev. 677 (May, 1985).

**12.** As stated by the Conference Report on H.R. 5174:

The mandatory abstention provisions of the House Bill are included in the bill. This would require a federal court to abstain *in a related proceeding* based on state law if that proceeding can be timely adjudicated in state court. (Emphasis supplied).

H.R. 5174, 98th Cong.2d sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 581.

**13.** The core and noncore proceedings are distinctions relevant only for article I judges; they do not affect our federal question jurisdiction in bankruptcy. *In re White Motor,* 761 F.2d 270 (6th Cir.1985); *In re White Motor,* 704 F.2d 254 (6th Cir.1983); *In re Saco Development Corp.,* 711 F.2d 441 (1st Cir.1983).

implement the *ex-contractu* claim.[14] Here, the government, as a private contracting party, attempted to terminate a commercial contract, the main asset of the debtor. The matter being a core proceeding, the bankruptcy court did not have the power to abstain. The bankruptcy court's decision in this respect resulted from an erroneous interpretation of section 1334(c)(2) and the same must fall.[15]

### III.

The distinction between a civil proceeding *"related to a bankruptcy case"* and *a case arising under* Title 11 is defined by 28 U.S.C. Sec. 157. The statute classifies the exclusive jurisdiction of bankruptcy judges into the concept of "core proceedings". As stated before, as a result of the case of *Northern Pipeline v. Marathon,* the classification of *core* and *noncore* was created. The concept of *"core proceeding"* comprises matters in which bankruptcy courts have traditionally entered orders and judgments exercising bankruptcy jurisdiction. *In re Byrd,* 51 B.R. 645, 647 (Bankr. Ohio 1985); 1 *Collier on Bankruptcy* para. 3.01 at 3–28 (1985). It is important to note that 28 U.S.C. Sec. 157(b)(3) clearly establishes that the determination whether an intended cause of action is to be classified as a "core proceeding" "shall not be made solely on the basis that its resolution may be affected by state law." 1 *Collier on Bankruptcy* at 34–37. The Second Circuit, in the case of *In re Pine Associates,* 733 F.2d at 210, citing *In re Kaiser,* 722 F.2d 1574 (2nd Cir.1983), rejected the argument that a distinction should be made between core and related proceedings based on whether they invoke state law.

The congressional enactment [16] of these traditional jurisdictional attributions of the bankruptcy courts are *numerus apertus:*

(2) Core proceedings *include, but are not limited to—*

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from

---

**14.** The complaint does not contain serious allegations of public policy or police power, nor specific allegations of danger to patients or the community.

**15.** The Supreme Court decision in *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), is authority for the proposition that the breach of an ordinary commercial contract gives rise to a claim actionable in bankruptcy under 11 U.S.C. Sec. 101(4)(B). The *Kovacs*

rationale, seen in light of the case at bar, allows a conclusion that the Department had a claim in bankruptcy which it sought to enforce through the local injunction. Section 101(4)(B). That being the case, the Department's position and argument against the close nature of the contract with a bankruptcy core proceeding is weaker because of this additional legal ground.

**16.** 28 U.S.C. Sec. 157(b)(2).

claims brought by the estate against persons who have not filed claims against the estate; and

(O) *other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship,* except personal injury tort or wrongful death claims. (Emphasis supplied).

These fifteen illustrations can be placed into four (4) broad categories, to wit: (a) matters of administration; (b) avoiding actions; (c) matters concerning the administration of the estate, and (d) others. 1 *Collier on Bankruptcy* para. 3.01 at 3–28.

■ We have decided that the characterization of the action of the Department as a "core proceeding arising under Title 11" would suffice to establish the lack of authority of the bankruptcy judge to abstain under section 1334(c)(2); since this section refers to a "related proceeding". We also find that the action by the Department was in the nature of seeking "an allowance ... of a claim(s) against the estate...." 28 U.S.C. Sec. 157(b)(2)(B), a type of action which Congress expressly provided that, "shall *not* be subject to the mandatory abstention provisions of section 1334(c)(2)." [17] We further hold that no matter how one analyzes the Department's action, there was no authority to abstain. The interest in the administration and monitoring of the assets of an estate in bankruptcy outweighs contrary actions as a matter of national bankruptcy public policy. H. Scoyle, *Conflicts of Law* at 910 (1983).

■ There is no doubt that the Department was seeking to enforce a claim over the debtor's estate which would finally convey the turnover of the essential asset. As a matter of fact, it did. This action, contrary to what the bankruptcy court held, is a core proceeding under 11 U.S.Code. A

federal court cannot refuse to enforce the automatic stay provisions, 11 U.S.C. Sec. 362. Therefore, we conclude that on this additional ground, the bankruptcy court's order of November 12, 1985, abstaining from exercising jurisdiction over the contract by reason of the bankruptcy filing, was null and void *ab initio.* Acts in violation of the automatic stay provisions, 11 U.S.C. Sec. 362, are null. 2 *Collier on Bankruptcy* 362–11, 362–88 (15th ed. 1984); *Halb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), cited in *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982); *Cournoyer v. Town of Lincoln,* 53 B.R. 478 (D.R.I.1985). Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation v. U.S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

## IV.

We now pass upon the question whether the action before the Superior Court and/or the subsequent administrative action directed to revoke the hospital's license are exempted from the automatic stay provisions contained in 11 U.S.C. Sec. 362.

■ The power of automatic stay has its foundation in the congressional interest of creating uniformity not only in the substantive laws of bankruptcy, but also in the territorial application of the law. The automatic stay was intended to impede a dissipation of "the assets of the estate and to avoid a multiplicity of forums where piecemeal adjudication of a bankruptcy case could take place." [18] The stay is an important aspect of bankruptcy protection and is an element of the debtor's opportunity to compose and rehabilitate. Hearing on H.R. 31 and H.R. 32 before the Subcomm. on Civil and Constitutional Rights of the House Committee on the Judiciary, 95th

---

17. H.R.Rep. No. 5174, 98th Cong., 2d sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Ad. News 581 (statement of Strom Thurmond).

18. H.R.Rep. No. 5174, 98th Cong., 2d sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Ad. News 579 (statement of Robert W. Kastenmeir).

Cong. 1st & 2d sess. 175, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6135. The general rule is that the filing of a bankruptcy petition operates as a stay of all judicial and nonjudicial proceedings against the debtor or his property. *In re Cash Currency Exchange, Inc.*, 762 F.2d 542, 551 (7th Cir.1985); 3 *Collier on Bankruptcy* at 362–1–363–1. Section 362 applies to entities as defined in 11 U.S.C. Sec. 101(14), not limiting its stay provision to creditors of the estate. *In re Altamirco*, 56 B.R. 199 (Bankr.C.D.Cal.1986).[19]

Put in another way, Congress' purpose in enacting the automatic stay provision was to grant immediate relief to the debtor from creditors and also to prevent dissipation of the debtor's asset before an orderly distribution to creditors could be arranged. Thus, much weight is to be placed on the *value* of preserving the debtor's estate. *MidAtlantic National Bank v. New Jersey Department of Environmental Protection*, —— U.S. ——, ——, 106 S.Ct. 755, 762, 88 L.Ed.2d 859 (1986); *U.S. v. Ilco, Inc.*, 48 B.R. 1016 (N.D.Ala.1985).

The Department alleges that the administrative license revocation proceeding, as well as the Superior Court suit, are valid exercises of its police power. It is thus claimed that said proceedings are exempted from the effects of the bankruptcy laws. The argument is raised for the first time on appeal. The local complaint, the local judgment or the license revocation petition cannot be seriously construed as being regulatory or police power actions.[20] A liberal examination of the local pleadings, petition, and judgment, does not sustain such argument. We are convinced that the Department resorted to such argument in a desperate attempt to validate its local action. In so doing, the Department relies on 11 U.S.C. Sec. 362(b)(4) and (b)(5).[21] The Court of Appeals for the First Circuit has repeatedly refused to treat issues on appeal not raised below. However, we will discuss the lack of merit of the Department's argument.

■ There is no question about the fact that the Commonwealth of Puerto Rico has the inherent power of enacting legislation to promote the public health, safety, and general welfare. It also has the authority of implementing it. *Comtronics, Inc. v. Puerto Rico Telephone Co., et al.*, 409 F.Supp. 800 (D.P.R.1975). This is not questioned. This principle has to be seen in light of the fact that federal bankruptcy law preempts any state regulation which would interfere with the same. *Pérez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

Congress has recognized some areas where a local government may exercise its

---

**19.** This case holds that section 362 applies to entities rather than creditors. The decision contains a persuasive statement. It stands for the proposition that federal courts have consistently distinguished between regulations falling within the police power and regulations constituting takings of property under the fifth and fourteenth amendments; citing *e.g. Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *MacLeod v. County of Santa Clara*, 749 F.2d 541, 545 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2705, 86 L.Ed.2d 721 (1985).

**20.** A license revocation proceeding may be considered an exercise of police power. However, in the context of this case, it was not. It is obvious that here, the license revocation proceeding was the final strategic touch to put an end to the contractual relationship. If the Department was to succeed in terminating the contract and in rehaving the hospital license, two mortal shots would have been given to the debtor. Be it remembered that in November, 1984, the Joint Commission on Accreditation of Hospitals accredited the facility for three years. In October, 1985, the federal government did the same.

**21.** Congress has recognized that certain types of actions should be exempted from the automatic stay. H.R.Rep. No. 95–595, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6087; S.Rep. No. 989, 1978 U.S.Code Cong. & Admin. News 5787, 5837; I.W. Norton, *Bankruptcy Law and Practice* Sec. 20.03 at 5. The 1978 Bankruptcy Act codified the two public policy exceptions which we now interpret. 11 U.S.C. Secs. 362(b)(4) and (b)(5).

**932**

authority without interfering with the bankruptcy laws. One of those areas is regulated by 11 U.S.C. Sec. 362(b)(4) and (5). These provisions, as stated in the legislative history, H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 174–75 (1977), *reprinted in* 1978 U.S.Cong. & Admin.News 6135–36, arose from the congressional concern of the abuses and overuse of the stay power vis-a-vis governmental regulation. The legislative history states:

> [U]nder present law, there has been some overuse of the stay in the area of governmental regulation. For example, in one *Texas* bankruptcy court, the stay was applied to prevent the state of *Maine* from closing down one of the debtor's plants that was polluting a Maine river in violation of Maine's environmental protection laws. In a *Montana* case, the stay was applied to prevent *Nevada* from obtaining an injunction against a principal in a corporation who was acting in violation of Nevada's anti-fraud consumer protection laws. The bill excepts these kinds of actions from the automatic stay. The states will be able to enforce their police and regulatory powers free from the automatic stay. The bankruptcy court has ample additional power to prevent damage to the bankrupt estate by such actions on a case-by-case basis. By exempting these state actions from the scope of the automatic stay, the court will be required to examine the state actions more carefully, and with a view to protecting the legitimate interests of the state as well as of the estate, before it may enjoin actions against the debtor estate.

The sections on which appellant Department relies to justify the validity of the Commonwealth court decision, to wit: 362(b)(4) and 362(b)(5) provide that:

> (b) The filing of a petition under section 301, 302, or 303 of this title (11 USC Sec. 301, 302, or 303) does not operate as a stay—
>
> .    .    .    .    .    .

(4) *under subsection (a)(1)* of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) *under subsection (a)(2)* of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. (Emphasis supplied).

From the above it can be seen that even though states have a definite right to enforce their police and regulatory powers, the courts have a duty to scrutinize the state claims of "police and regulatory powers" so as to avoid situations where, as here, the mere fact that the Department of Health is involved, may be seen as police or regulatory power *per se*. This is not the protected interest. In order to rely on police and regulatory power, the case must be one within such category. It is not enough for the Department to say that this is the case. We must look at the contract, the license, the local complaint, the local judgment, and local license revocation proceedings to determine if the Department is indeed protecting through police and regulatory power the public interest or is simply using the argument as an excuse to justify its conduct as a "private" litigant over a contract matter. Our examination of the record on appeal leads us to conclude that the police power/regulatory power argument is simply an unfounded eleventh-hour claim. The file does not sustain such a proposition. We are dealing with a contract over a hospital and a license revocation proceeding concurrently brought as an additional line of attack to achieve the termination of the contract. It follows that the Department's claim of the benefits of 11 U.S.C. 362(b)(4) and (b)(5) is unfounded for its failure to even meet the threshold prima facie demonstration of a police/regulatory case.

Notwithstanding the above, we understand that 11 U.S.C. 362(b)(4) and (b)(5)

should be discussed so as to establish their inapplicability to the case at bar.

■ Section 362(b)(4) permits in a police/regulatory power *bona fide* situation, the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power that under subsection (a)(1) was or could have been commenced before the commencement of the bankruptcy case, or to recover a claim against the debtor that arose before the filing of the bankruptcy case. It appears plainly from the language of the section, seen in light of the contract, the local complaint, and the judgment, that we are not faced with such an action. The request and the grant of termination of contract were based in their integrity on purely contractual grounds. The complaint and the local judgment so reveal. Therefore, it can only be said that the Department has selectively read the statute, 362(b)(4), in an attempt to accommodate it to its needs. Assuming *argüendo* that indeed police and regulatory power were being validly exercised, section 362(b)(4) only allowed the conclusion of the judicial or administrative action. The section *does not authorize* the takeover of debtor's property. This interpretation is confirmed by the other section relied upon by the Department, that is, 362(b)(5), dealing with enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce its police or regulatory power. By terms of section 362(b)(5), seen in light of section 362(a)(2), to which it is specifically related, the judgment must have been obtained *before the commencement* of the bankruptcy litigation.

■ These are not the facts of the Department's case. The judgment granting injunctive relief was entered after the bankruptcy case was initiated. Therefore, the Department could not have acted depriving debtor of its estate by simply raising the banner of "police power". The absolute and broad injunction of section 362(b)(3) applies.[22] *See Penn Terra Ltd. v. Dept. of Environ. Resources*, 733 F.2d 267 (3rd Cir.1984); *In re First Federal Corp.*, 42 B.R. 682 (N.D.Va.1984); *Ahrens Aircraft v. National Labor Relations Board*, 703 F.2d 23 (1st Cir.1983);[23] *In re Mansfield Tire and Rubber Co.*, 660 F.2d 1108, 1111 (6th Cir.1981); *see also Securities & Exchange Com'n v. First Fin. Group of Tex.*, 645 F.2d 429, 437 (5th Cir.1981) (stating that there is no exemption from the automatic stay affecting an act to obtain possession of property of the estate or of property from the estate).

■ Be it remembered that even though the exception recognized under section 362(b)(4) has been "narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals and safety,"[24] it does not permit anybody to directly or indirectly take over the "property under the control of the bankruptcy court." *In the Matter of Cash Currency*, 762 F.2d at 548. Such enforcement would be available under 11 U.S.C. Sec. 362(d). If the focus of alleged police power is directed at debtor's financial obligations rather than the state's health, section 362(b)(4) is unapplicable. *In re Sampson*, 17 B.R. 528 (Bankr.Conn.1982); *Cournoyer v. Town of Lincoln*, 53 B.R. 478 (D.R.I.1985). Congress meant to exempt from the stay governmental acts necessary to end a continuing violation of valid regulatory laws.

**22.** Section 362 Automatic Stay
    (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities.

    .   .   .   .   .

    (3) any act to obtain possession of property of the estate or of property from the estate;

**23.** Where it is stated "it is clear that 11 U.S.C. sec. 362(b)(4) and (5) prevent the application of the automatic stay provisions of 11 U.S.C. Secs. 362(a)(1) and (2)."

**24.** We state once again, the local lawsuit was not based on laws affecting health, welfare, morals or safety. It was a classic contractual termination case.

## V.

By virtue of the foregoing, the following is the specific disposition of the pending bankruptcy appeals:

1. In Civil No. 85–2029 (JAF), where the Department seeks review and reversal of the order entered by the bankruptcy court on August 2, 1985, enjoining the Department from further prosecuting the license revocation proceeding against Corporación, the decision of the bankruptcy court is hereby AFFIRMED.

2. In Civil No. 86–0363 (JAF), where the Department requests that the bankruptcy court's order of January 24, 1986, allowing the assumption of contract be set aside, the decision of the bankruptcy court is hereby AFFIRMED. We find that the elaborate findings of fact by the bankruptcy court on the issue are to be respected. They are not clearly erroneous. The bankruptcy court had the opportunity to pass upon the evidence and view the hospital premises. We give weight to such findings. Bankruptcy Rules, Rule 8013.

3. In Civil No. 86–0364 (JAF), where Corporación, seeks the reversal of the bankruptcy court's order of February 18, 1986, granting a stay of execution of its order of assumption of contract, the stay issued by the bankruptcy court is SET ASIDE.

■ The debtor will be allowed to assume the contract. Because of the time that has elapsed from February 18th to this date, the debtor will file with the bankruptcy court within five (5) days a detailed plan setting forth the procedure and safeguards to be observed in the process of assuming the contract and taking back the operation and management of the Fajardo Subregional Hospital. The bankruptcy court will pass upon this plan with all deliberate speed, giving this matter preference in its calendar. The bankruptcy court will implement a remedy to closely monitor the situation while the rehabilitation plan proposed by debtor is passed upon. The contract between the parties shall be respected as fully as possible within the bankruptcy context. The bankruptcy court will have jurisdiction to entertain any future petition by any interested party, including the Department, as it relates to the contract in the event that the status of the debtor so warrants. 28 U.S.C. Sec. 157(b)(2)(B), (E), (G), (L), and (O). In other words, this determination is without prejudice of the rights of *any* party which is within the spirit and content of the Bankruptcy Code. The Department is enjoined from further prosecuting this matter in any other forum not having bankruptcy jurisdiction. A copy of this order shall be notified to the Superior Court of Puerto Rico, San Juan Part, relating to the case of *Commonwealth of Puerto Rico, Dr. Luis Izquierdo Mora, et al. v. Corporación de Servicios Médicos Hospitalarios de Fajardo, Inc.*, Civil PE 85–426 (902).

4. The emergency request in Misc. No. 86–0030 (JAF), seeking emergency relief on the issue of the stay of execution of the bankruptcy court order of assumption of contract is declared MOOT.

The cases are remanded to the bankruptcy court for further proceedings consonant with opinion.

IT IS SO ORDERED.