**In re CORPORACION de SERVICIOS MEDICO HOSPITALARIOS de FAJARDO, Debtor.**

Civ. Nos. 85–2029 (JAF), 86–0363 (JAF) and 86–0364 (JAF).

Misc. No. 86–0030 (JAF).

United States District Court, D. Puerto Rico.

Aug. 6, 1987.

---

Héctor Urgell Cuebas, Virgilio Méndez Cuesta, San Juan, P.R., for plaintiff/petitioner.

María L. Contreras, Jaime Brugueras, Ramirez & Ramirez, San Juan, P.R., for defendant/respondent.

## OPINION AND ORDER

FUSTE, District Judge.

On July 8, 1987, Corporación de Servicios Médico Hospitalarios de Fajardo, Inc., debtor, hereinafter referred to as "Corporación", filed a motion for contempt and for violation of this court's order of April 15, 1986, directing the Department of Health of the Commonwealth of Puerto Rico, through its Secretary, Dr. Luis Izquierdo Mora, to turn over to debtor the Fajardo Subregional Hospital facilities. *See In re Corporación de Servicios Médicos Hosp.,* 60 B.R. 920 (D.P.R.), *aff'd* 805 F.2d 440 (1st Cir.1986).

An aborted hearing was held on July 28, 1987. On said occasion, the court expected both parties to assist the court in putting an end to this controversy. After hearing some evidence, we refused to consider the matter. The parties were not prepared. We advised those concerned of the fact that this court would not pass upon such a delicate matter based on half-baked, unplanned or muddled presentation of evidence. A hearing *de novo* was held August 4–5, 1987. The parties appeared prepared. We find for debtor. *See* orders entered by this court July 29 and 31, 1987, Appendices I and II, this opinion and order.

### I.

Contrary to respondent's claim, the controversy before the court is not a different contract, a "new case" or fresh adversary proceeding needing discovery, pretrial motions, and full-blown trial preparation under the Federal Rules of Civil Procedure. What we have before us is a request by debtor that our order of April 15, 1986, as further implemented by the bankruptcy court through their order of April 26, 1986, entered April 28, 1986, docket document No. 28, Exhibit B, be enforced. Following

our directives, the bankruptcy court ordered as follows:

We, therefore, order that the Department of Health and the Administración de Facilidades y Servicios de Salud (AFASS) return to debtor at 7:00 A.M., Sunday, April 27, 1986, the equipment, inventory, and *physical facilities of the Fajardo Subregional Hospital which are the subject of the operation and service contract between the parties.* The assistance of the United States Marshal is authorized if requested by a party to effectuate this turnover. (Emphasis added)

The physical facilities of the hospital were turned over as ordered, except for two structures known as the House of the Medical Director and the House of the Hospital Administrator. These two structures were part of the property under the original contract of December 1, 1982.[1] As of November 2, 1985, when the Secretary of Health of Puerto Rico conducted "Operation Piranha" which, in turn, motivated our intervention and order of turnover, the structures in question were being used by the debtor. The old Administrator's house contained the hospital's engineering and maintenance facilities. The old Medical Director's home contained the orthopedic department and an engineering department's workshop. The evidence is overwhelming in this respect. As a matter of fact, respondents' main witness, Dr. José E. Soler Zapata, so admitted. We will now examine the evidence in detail.

### II.

The contract in question was entered into on December 1, 1982. By January 1983, Corporación had taken over all of the hospital facilities highlighted in yellow in Petitioner's Exhibit 1A. This included the two houses in question. These two houses, originally used by the medical director and hospital administrator, had been destined to other uses long before the contract was

---

1. The contract does not spell out the structures to be surrendered—most important, it fails to save any structure belonging to the hospital comlex for future Department of Health use.

We read the contract, in light of the evidence, as meaning that the two structures in question are covered by the contract.

entered into. The evidence shows that Corporación, after receiving the hospital premises on April 27, 1986, requested from the Secretary of Health the structures in dispute. Dr. Carlos Lopategui, President of the Board and Medical Director, met with the Secretary of Health to discuss the matter, without obtaining the necessary results. As a matter of fact, Dr. Lopategui wrote to the Secretary of Health, Dr. Luis Izquierdo Mora, on May 9, 1986 and November 24, 1986. The May 9th letter, which remains unanswered, is most revealing as to the endeavors made by Corporación to get back the property. The November 24th letter is also most revealing. Both letters, seen in the context of the evidence, appraise the Secretary of Health of the several meetings, contacts, and calls made to resolve the dispute. On said occasion, Dr. Lopategui warned the Secretary that the failure to comply with our previous order would eventually bring the matter back to federal court. This particular letter triggered action on the part of respondent.

As we see the matter, at this point in time, both parties were playing with fire. There existed a binding federal court order which in clear and unequivocal terms mandated the return of all facilities illegally taken away from Corporación by the Secretary of Health. It was obvious that this court's order and the quoted bankruptcy court order meant only one thing in practical terms, i.e., that the debtor be placed in the same position it was before the illegal takeover. At this point in time, *both parties* were under the obligation of bringing this dispute before the court as civilized beings do. Corporación held back in filing the motion, thus adding gasoline to the fire. The Secretary, on the other hand, looked for a way to bypass the court order.

### III.

The intended bypassing of the court order occurred as follows. Dr. José E. Soler Zapata, Director of the Fajardo Subregion-

al Hospital after the illegal takeover, and now the Department of Health's top man in the Fajardo Subregion, looked for evidence to justify recommendations made to the Secretary not to return the buildings. In his own words, he searched old records and files and found two documents received in evidence as Petitioner's Exhibit 6 and Respondents' Exhibit A, to justify his position. Exhibit 6 is a letter dated August 15, 1984 directed to Dr. Juan B. Meléndez, then President of Corporación. That letter obviously refers to a permission given by the Department of Health to Corporación to use *additional* structures, referred to in the evidence as old maid's quarters and garages or the pink structures (highlighted in pink, Exhibit 1A). Dr. Soler-Zapata interpreted said letter as referring to the House of the Medical Director and the House of the Administrator (highlighted in yellow, Exhibit 1A). It followed from Dr. Soler-Zapata's admittedly hearsay information and interpretation that the structures in controversy were not part of the original December 1, 1982 contract and, thus, not covered by the order of this court as expanded by the bankruptcy court. Had that been the case, an argument could be made that structures voluntarily lent to Corporación would be exempt from court order and contract enforcement. 11 U.S.C. sec. 365(c)(1)(A). Furthermore, Dr. Soler-Zapata found an internal memo exchanged between the hospital and the former Secretary of Health, Dr. Jaime Rivera Dueño, dated March 11, 1983, Respondents' Exhibit A, regarding a permission to use a structure (undefined) in the hospital premises for external clinics. This he also took to mean the structures in dispute.

As a result of said analysis, Dr. Soler-Zapata wrote to the Secretary of Health on May 22 and December 22, 1986, recommending that the two houses not be returned. Dr. Izquierdo Mora accepted Dr. Soler-Zapata's recommendations and refused to return the structures. *See* letter of December 4, 1986, Petitioner's Exhibit 4.[2]

**2.** Such argument was made as a matter of law. Respondent claims that the authority to use the structures in question emanated not from the

December 1, 1982 contract, but from petitioner's Exhibit 6 and respondent's Exhibit A. The Secretary, at the conclusion of the testimony, aban-

The parties kept on playing lawyer/judge until the filing of the motion for contempt on July 8, 1987.

In passing upon this matter, we have gauged the credibility of witnesses. Fed. R.Civ.P. 52(a). We give full credence to the testimony of Dr. Lopategui and Dr. Juan Meléndez. Both were actors in this ordeal. Dr. Meléndez remained unchallenged on the fact that the two structures were part of the original contract. We cannot say the same about respondent's witness José A. Mercado. First, his appearance and demeanor suggested concern about being caught off-base. He first attempted to give a meaning to petitioner's Exhibit 6 only to recant when questioned by the court. We received the distinct impression that he was in the sad position of having been called to testify without alternative. His claim of not having discussed his "knowledge" of the facts with Dr. Soler-Zapata is not credible.

## IV.

On this record, there is overwhelming evidence and admissions that the structures in question were part of the contracted property. As such, they were the object of the orders referred to herein. They shall be returned to Corporación under penalty of civil contempt against the Secretary of Health in his personal capacity. This shall be accomplished on or before *Thursday, August 13, 1987, at 12:00 Noon.*

There are enough indicators in the case showing that the conduct of the Secretary has had as its primary purpose the avoiding of clear court orders and their spirit. Civil contempt gives this court wide discretion in fashioning a remedy, including imprisonment of the contemnor until he purges himself of his contempt by complying with court orders. A fine may also be imposed upon the Secretary in his personal capacity. Against such potential remedy, there is no defense of qualified immunity. *C.f., De Abadía v. Izquierdo Mora,* 792

F.2d 1187 (1st Cir.1986); *In re Córdova González,* 726 F.2d 16, 20–21 (1st Cir.1984).

Since both parties kept the controversy away from the court just too long, and since both parties boldly played lawyer/judge, disregarding their mutual civilized obligation of bringing the matter before the court as soon as the controversy accrued, we will not entertain movant's request for an award of damages on the violations now under consideration.

The parties should understand that this order will not be stayed pending appeal. The August 13, Noontime deadline, is final.

IT IS SO ORDERED.

### APPENDIX I

### ORDER

### July 29, 1987

On July 8, 1987, Corporación de Servicios Médico Hospitalarios de Fajardo, hereinafter referred to as "Corporación", filed a motion for contempt and for violation of this court's order of April 15, 1986, directing the Department of Health of the Commonwealth of Puerto Rico, through its Secretary, Dr. Luis Izquierdo Mora, to turn over to the debtor the Fajardo Subregional Hospital facilities. *See In re Corporación de Servicios Médicos Hosp.,* 60 B.R. 920 (D.P.R.), *aff'd* 805 F.2d 440 (1st Cir.1986).

On July 16, 1987, this court entered an order on the face of docket document No. 28, setting a hearing on all issues for July 28, 1987. On July 14, 1987, the Department of Health of the Commonwealth of Puerto Rico requested an extension of time in which to plead. On July 22nd, we entered a marginal order on the face of docket document No. 29 stating, in essence, that their would be no extensions, inasmuch as the issue was simple enough to be addressed at the hearing scheduled for July 28th. On said occasion, we indicated to the parties that, if necessary, evidence would

---

doned Exhibit 6 and rested solely on Exhibit A. He claims that a new contract, a civil-law *commodatum,* 31 L.P.R.A. secs. 4521–4554, came into being in 1983. Said contract is claimed to be not enforceable under 11 U.S.C. sec.

365(c)(1)(A), inasmuch as there is no binding obligation of the Secretary to act upon such contract in light of Exhibits C and D. Such argument is not supported by the evidence.

be received regarding the issue in controversy.

On July 17, 1987, an additional petition requesting time to plead was filed by defendant Luis Izquierdo Mora. On July 22nd, and on the face of docket document No. 30, we repeated our order to the effect that a hearing would be held July 28, 1987 and that evidence would be received to put an end to the controversy.

The hearing was held as scheduled. Dr. Carlos Lopategui, President of the Board of Directors and Medical Director of Corporación, testified as to some facts over which he had personal knowledge. In addition thereto, he testified as to hearsay information which he obtained in the ordinary course of business after taking over the hospital facilities on February 7, 1985. The defendant presented the testimony of José A. Mercado Pérez, Finance Director of the Fajardo Health Region, Department of Health, Commonwealth of Puerto Rico. This testimony was also based upon hearsay evidence and upon understandings of the witness regarding a contract, court orders, and other matters over which he had no personal knowledge.

Both witnesses attempted to draw on the blackboard a layout of the physical facilities of the hospital. Both testimonies were indeed confusing and did not assist the court in passing upon the matter in controversy. The parties, at best, were not prepared to enter such hearing, to the point that a reader of the record will not be able to decipher the dispute the parties had before the court today.

This case has been characterized from the beginning by hysterical responses to the acts of either party. Here, we have a situation whereby the hospital was ordered returned to Corporación on or about April 29, 1986, two buildings in dispute were never returned to Corporación, and it is now, in July 1987, that the hysterical response takes place and a contempt request is made against defendants.

Such a serious matter cannot be decided by the court based upon hearsay evidence and without having the benefit of at least an aerial photograph or a plan or layout of the physical areas of the hospital, including those in controversy. In addition thereto, both parties should bring before the court as witnesses and/or adverse witnesses, those persons with personal knowledge regarding the issues in controversy. Subpoena power is available to the parties. Otherwise, we would be deciding the issue haphazardly and in a manner in which the best interests of both parties and the interests of the sound administration of bankruptcy-related matters will not be protected.

On the basis of the poor quality of evidence received and the presentation at the hearing held on July 28, 1987, we *DENY WITHOUT PREJUDICE* the motion for contempt sanctions and for violation of the orders of this court filed by Corporación on July 8, 1987. The court will entertain this matter only if the movant and/or the parties, that is, both sides of the controversy, are in a position to adequately present the issues before the court.

A hearing *de novo* will be held *August 4, 1987, at 9:00 A.M.* Parties are ordered to appear fully prepared. This court will not tolerate half-baked, unplanned or muddled presentation of evidence.

IT IS SO ORDERED.

## APPENDIX II

### ORDER

July 31, 1987

We have before us a motion by the Department of Health of Puerto Rico and the Secretary of Health, requesting that a hearing scheduled for August 4, 1987 be postponed for fifteen days, all as a result of a request by petitioner that we find the movants in contempt for failure to obey a court order.

The motion is *DENIED.* In any event, we will expand on our related order of July 29, 1987. The parties to this controversy should realize that the court does not vicariously enjoy incidents of this nature. In ideal conditions, parties accept and implement court orders irrespective of their right to disagree with the rationale behind

them. This is the civilized way of dealing with disputes.

All we want to hear about during the hearing scheduled for August 4, 1987 is the testimony of those persons with first-hand knowledge regarding the incident. Of course, the parties realize that it is not up to the court to tell each side what to present or what to omit. Both sides are aware of the issue, of the fact that the contract papers are not crystal clear, and of the fact that there is at least one letter which indicates that some structures which could be easily confused with the ones in issue were not part of the contract. These are the aspects that should be cleared before the court can act. The parties may illustrate the court with drawings or photos or accurate blackboard drawings if they deem it advisable. Dr. Lopategui and Mr. Mercado's testimony fell short. We hesitate to act on such delicate matters without having more definite evidence. This evidence is readily available to both sides. The same can be gathered and presented in less than two hours with a minimum of effort and preparation. This is precisely what we expect to hear and see next August 4, 1987.

In order to accommodate Mr. Brugueras, the hearing will take place at 2:00 P.M. The clerk will note the hour change for calendar purposes.

IT IS SO ORDERED.